UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLENDY CIFUENTES, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CYNTHIA KEAST, et al.,<br><br>Defendants. | Case No. 17-cv-00575-JSC<br><br>**ORDER DISMISSING PLAINTIFFS' FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND**<br><br>Re: Dkt. Nos. 15, 27 |

Glendy Cifuentes and H.D.C (collectively, "Plaintiffs") allege their civil rights were violated by the Central Marin Police Authority ("Marin Police"), officer Cynthia Keast ("Keast"), officer Sean Fahy ("Fahy"), officer Robert Anderson ("Anderson"), and officer Jean McVeigh ("McVeigh") (collectively, "Defendants"). Now pending before the Court is Defendants' Rule 12(b)(6) Motion to Dismiss. Defendants contend that Plaintiffs' First Amended Complaint fails to state facts sufficient to sustain any of Plaintiffs' six claims against Defendants and that attorney's fees under "U.S.C Section 794(a)" is improper.

Having carefully considered the pleadings and briefs submitted by the parties, the Court GRANTS Defendants' motion to dismiss with leave to amend.

**COMPLAINT ALLEGATIONS**

This action arises out of an incident on January 26th, 2016 when Plaintiffs Cifuentes and her son 9-year-old son H.D.C. were allegedly attacked by police officers in their home. Plaintiffs were preparing for bed after a verbal argument with Cifuentes' boyfriend Hugo Malina when a neighbor called in a disturbance and officers Keast, Fahy, Anderson and McVeigh were dispatched to the Cifuentes home. (Dkt No. 15 at ¶¶15-16.) Plaintiffs were in Cifuentes' bedroom when officers Keast and Anderson came to their closed bedroom door. Keast spoke with

Cifuentes, who told the officers that everything was fine. (*Id.*) Anderson is a field training officer and Keast appeared to be in field training as Anderson was providing Keast with directions. (*Id.* at ¶17.)

Cifuentes tried to close the door; however, Keast violently grabbed Cifuentes by the arm, pushed Cifuentes into the bedroom, and pushed Cifuentes by her face. (*Id.*) Officer Fahy came into the bedroom and one or more officers grabbed Cifuentes by the neck and threw her against the closet. (*Id.*) Two of the officers then grabbed Cifuentes' arms, twisting and pulling them. Cifuentes' son cried out for his mother at which point one of the male officers allegedly grabbed the child's arms and twisted them behind his back until the child's wrist fractured. (*Id.*) Defendant McVeigh then transported H.D.C. down the hallway and into the living room, where the child is seen on lapel camera nursing an injured wrist. (*Id.*)

Cifuentes was not behaving in an unlawful manner yet Cifuentes was charged with resisting arrest and battery on a police officer. (*Id.* at ¶18.) The charges against Cifuentes were eventually dismissed. (*Id.*) The video from the incident clearly demonstrates the poor training of Keast who "unnecessarily escalated the situation" by using "unwarranted and excessive force" against Cifuentes. (*Id.*) H.D.C. was taken to the hospital for his injuries and diagnosed with a broken wrist. (*Id.* at ¶19.) Plaintiffs suffered physical and psychological injuries. (*Id.* at ¶20.)

**DISCUSSION**

**I.     Plaintiffs' Claims**

   A.     <u>Claim One: Sufficiency of Plaintiff's Section 1983 Allegations</u>

Plaintiffs' first cause of action is brought under 42 U.S.C. § 1983 and alleges violation of the Fourth Amendment to the United States Constitution. There are two requirements for a Section 1983 claim: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right protected by the Constitution or laws of the United States. *Leer v. Murphy*, 844 F.2d 628, 662 (1988). Therefore, the "first step in any [§ 1983] claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver,* 510 U.S. 266, 271 (1994). Liability under section 1983 arises only upon a showing of personal participation by the defendant. *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979).

2

Vicarious liability is inapplicable in Section 1983 actions. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Plaintiff must show that each defendant, through their own individual actions, violated the constitution. *Id*.

Plaintiffs' section 1983 claim fails because it does not distinguish between Plaintiffs and the individual defendants. For example, although the complaint alleges that there were two male officers and two female officers, that one of the two male officers broke H.D.C.'s wrist, and there are no other allegations that suggest either of the female officers used excessive force against H.D.C, H.D.C.(through his guardian ad litem) has sued all four officers. Moreover, in their opposition, Plaintiffs assert that Officer Anderson caused H.D.C.'s injuries, but that is not included in the complaint. And while Ms. Cifuentes does not know which one of the officers, besides Officer Keast, used force against her, presumably she knows whether it was a male or female officer or at least where that force occurred.

Accordingly, Plaintiffs' section 1983 claim is dismissed with leave to amend. Any amended complaint should plead each plaintiff's claim separately and identify, to the best of their ability, the defendants they believe responsible for their injuries.

B. Second Claim: Section 1983 *Monell*

Plaintiffs' second cause of action is a Section 1983 *Monell* claim against the Central Marin Police Authority. Local governing bodies can be sued directly under Section 1983 only where the alleged unconstitutional conduct is the result of an official policy, pattern, or practice. *Monell v. Dept. of Social Servs. of City of New York*, 436 U.S. 658, 690 (1978). A municipality may also be held liable under Section 1983 for constitutional violations resulting from its failure to train its employees. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 379 (1989). "The inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train in a relevant respect amounts to deliberate indifference to the constitutional rights of persons with whom the police come into contact." *Id*. Only where a failure to train reflects a "deliberate" or "conscious" choice by the municipality can the failure be properly thought of as an actionable city "policy." *Id*. *Monell* will not be satisfied by a mere allegation that a training program represents a policy for which the city is responsible. *Id*. Rather, the focus must be on whether the program is

adequate to the tasks the particular employees must perform, and if it is not, on whether such inadequate training can justifiably be said to represent "city policy." *Id*. Moreover, the identified deficiency in the training program must be closely related to the ultimate injury. *Id*. Thus, a plaintiff must still prove that the "deficiency in training actually caused the police officers' indifference." *Id*. Permitting "failure to train" cases to go forward on a lesser standard of fault would result in de facto respondeat superior liability on municipalities, which the Supreme Court rejected in *Monell*. 436 U.S. at 693–694.

Plaintiffs allege Keast was poorly trained because she "unnecessarily escalated the situation" by using "unwarranted and excessive force" against Cifuentes. (Dkt No. 15 at ¶20.) These facts alone are insufficient. In order to survive a motion to dismiss a *Monell* claim must "consist of more than mere formulaic recitations of the existence of unlawful policies, conducts or habits." *Anakin v. Contra Costa Reg'l Med. Ctr.*, 2016 WL 1059428, *3 (N.D. Cal. Mar. 17, 2016) (quoting *Bedford v. City of Hayward*, 12-cv-00297-JCS, 2012 WL 4901434, *12 (N.D. Cal. Oct. 15, 2012)).

Plaintiffs state they do not currently have access to discovery materials and therefore it should be no surprise that they "lack elaborate details to support their failure to discipline and inadequate training claims." This will not do. "While the Court recognizes the inherent difficulty of identifying specific policies absent access to discovery, that is nonetheless the burden of plaintiffs in federal court." *Roy v. Contra Costa Cty.*, 2016 WL 54119, at *4 (N.D. Cal. Jan. 5, 2016); *see also Dougherty v. City of Covina*, 654 F.3d 892, 900-01 (9th Cir. 2011) (affirming dismissal where complaint "lacked any factual allegations...demonstrating that [the] constitutional deprivation was the result of a custom or practice, or that the custom or practice was the 'moving force' behind [the] constitutional deprivation"). Plaintiffs' conclusion that Keast used "unwarranted and excessive force" is the sort of label that the Supreme Court has counseled is insufficient. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiffs fail to state a *Monell* claim.

C. <u>Negligence</u>

Plaintiffs allege that Keast, Fahy, Anderson, and McVeigh caused Plaintiffs' injuries as a

4

result of their negligent conduct or negligent failure to act. "To prevail in a negligence action, a plaintiff must show that the defendant owed a legal duty, the defendant breached that duty and the breach proximately caused injury to the plaintiff." *J.L. v. Children's Institute, Inc.*, 177 Cal.App.4th 388, 396 (2009) (citing *Wiener v. Southcoast Childcare,* 32 Cal.4th 1138, 1145 (2004)). A police officer breaches a duty of care when he fails to use the skill, prudence, and diligence that other members of her profession commonly possess and exercise. *Harris v. Smith*, 157 Cal.App.3d 100, 104 (1984). "To establish such a duty, the plaintiff must show an affirmative act which placed her in peril or increased the risk of harm, an omission or failure to act after a promise was made, or a special relationship in which she relied to her detriment on official conduct in a situation of dependency." *Id* at 105.

Plaintiffs' negligence claim fails for the same reason as the excessive force claim: the failure to distinguish among plaintiffs and defendants. Accordingly, the negligence claim is dismissed with leave to amend.

D. California Civil Code Section 52.1

The Bane Act, California Civil Code Section 52, provides a right to relief when someone "interferes by threats, intimidation, or coercion ... with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." The elements of a claim for relief are: 1) an act of interference with a legal right by 2) intimidation, threats or coercion. *Haynes v. City and County of San Francisco,* 2010 WL 2991732, at *6 (N.D. Cal. Jul. 28, 2010); *Jones v. Kmart Corp.,* 17 Cal.4th 329, 334 (1998). The Bane Act applies when there is a Fourth Amendment violation, an arrest without probable cause, accompanied by the physical harm against an unresisting plaintiff, i.e., coercion that is in no way inherent in an arrest, either lawful or unlawful. *Bender v. County of Los Angeles*, 217 Cal.App.4th 968, 978 (2013).

Here, there is a Fourth Amendment claim because Plaintiffs allege they were unlawfully detained. This allegedly unlawful arrest was accompanied by the physical harm of both unresisting Plaintiffs. Keast allegedly grabbed Cifuentes by her arm in a violent manner, pushed into her bedroom, and pushed her by her face. Another officer grabbed Cifuentes by the neck and

5

slammed her against a closet. Two other officers grabbed Cifuentes by the arms, twisting and pulling them. When H.D.C. cried out for his mother, two male officers grabbed the child by his arms, twisting them until his wrist broke. Like *Bender*, Plaintiffs allege they were unlawfully detained and experienced physical harm no way inherent in an arrest. However, Keast is the only officer named as participating in the alleged violence, therefore Plaintiffs' Section 52.1 claim survives to Keast but fails in regards to Fahy, Anderson, and McVeigh.

Defendants rely on *Shoyoye v. County of Los Angeles,* 203 Cal. App. 4th 947 (2012) to argue that *independent* coercion is required in every instance of excessive force. Not so. As the Courts in this District have concluded, Defendants' argument is an "overly broad reading of *Shoyoye*" which conflicts with California Supreme Court precedent. *Holland v. City of San Francisco,* 2013 WL 968295, at *10 (N.D. Cal. Mar. 12, 2013); *Little v. City of Richmond*, 2013 WL 5663124, at *3 (N.D. Cal. Oct. 17, 2013); *M.H. v. County of Alameda,* 2013 WL 1701591, at *7 (N.D. Cal. Apr. 18, 2013). The *Holland* court explained the difference between intentional and unintentional constitutional violations:

> In *Venegas v. County of Los Angeles,* the California Supreme Court held that the plaintiffs "adequately stated a cause of action under section 52.1" based on allegations showing an unconstitutional search and seizure. 32 Cal.4th 820, 827–28 & 843 (2004). The court pointed out that section 52.1 does not "extend to all ordinary tort actions" because it is predicated on the violation of a "constitutional or statutory right," as opposed to common law. *Id.* at 843. Because the plaintiffs' allegations involved "unconstitutional search and seizure violations" and not "ordinary tort claims," they had "adequately stated a cause of action under section 52.1." *Id.*
>
> By contrast, in *Shoyoye,* an administrative error resulted in the plaintiff being erroneously detained for two weeks after his release date. 203 Cal.App. 4th at 959. The court held that in the absence of a showing of knowledge or intent, the coercion inherent in a wrongful overdetention—the bare fact that the plaintiff was not free to leave the jail—was insufficient to satisfy section 52.1 's requirement that the interference with the plaintiff's rights be accomplished "by threats, intimidation, or coercion." *Id.* The court reasoned that section 52.1 was not intended to redress harms "brought about by human error rather than intentional conduct." *Id.* It distinguished the facts in *Venegas* on the ground that, in that case, "the evidence presented could support a finding that the probable cause that initially existed to justify stopping the plaintiffs eroded at some point, such that the officers' conduct became intentionally coercive and wrongful." *Id.* at 961. The *Shoyoye* court thus acknowledged that a Bane Act claim could be based on an arrest without probable

cause, even if no "threat, intimidation, or coercion" were shown separate and apart
from that inherent to the underlying constitutional violation.

*Id*. Thus, "Section 52.1 does not necessarily require threats, intimidation, or coercion independent of the violation of the constitutional right." *Little*, 2013 WL 5663124, at *3. In addition, because the alleged conduct was intentional, and not unintentional as in *Shoyoye*, Plaintiffs adequately alleged the coercion necessary to plead a Bane Act violation against Keast.

*Quezada*, *Allen*, and *King* are unpersuasive. In *Quezada v. City of Los Angeles*, the court concluded that being compelled to submit to a breathalyzer test, potentially suffering adverse employment consequences, or having a car impounded did not constitute a threat or coercion. 222 Cal.App.4th 993, 1008 (2014). In *Allen v. City of Sacramento*, the complaint did not allege use of excessive or unreasonable force by the police, nor did plaintiffs experience any violence. 234 Cal.App.4th 41, 66 (2015). Similar to *Quezada* and *Allen*, the plaintiff in *King v. State* did not experience any physical harm, instead the police officer whispered "do something" in the plaintiff's ear. *King v. State*, 242 Cal.App.4th 265, 294 (2015). The court concluded that this threat did not cause the plaintiff to do anything or refrain from doing anything, only that "it caused him fear." *Id*. at 295. None of the plaintiffs in the authorities Defendants cite experienced violence during an unlawful arrest.

Nonetheless, as Plaintiffs again do not distinguish among plaintiffs and defendants, the Bane Act claim will be dismissed for the same reasons as the excessive force and negligence claims.

E. Battery

"A battery is any intentional, unlawful and harmful contact by one person with the person of another." *Ashcraft v. King*, 228 Cal.App.3d 604, 611 (1991) (citing *Delia S. v. Torres*, 134 Cal.App.3d 471, 480 (1982); *see also* Rest.2d Torts, § 18. Here, Plaintiffs' allege Keast violently grabbed Cifuentes by the arm, pushed her into her bedroom, and pushed her by her face. The grabbing and pushing, as pled, is sufficient as to intentional and harmful contact by Keast. But again, the claim is pled together by both plaintiffs against all four officers and will therefore be dismissed with leave to amend.

F. Negligent Infliction of Emotional Distress

Negligent infliction of emotional distress ("NIED") is not an independent tort. *Potter v. Firestone Tire & Rubber Co.,* 6 Cal.4th 965, 984 (1993). Rather, "[n]egligent infliction of emotional distress is a form of the tort of negligence, to which the elements of duty, breach of duty, causation and damages apply." *Huggins v. Longs Drug Stores Cal., Inc.,* 6 Cal.4th 124, 129 (1993). Plaintiff agrees. (Dkt. No. 34 at 11.) Accordingly, the NIED claim is dismissed as encompassed by the negligence claim.

**VII. Attorney's Fees Section 794(a)**

Plaintiffs' pray for attorney's fees pursuant to "U.S.C. Section 794(a)" (Dkt. No. 15 at 10:10), but fail to specify the title. The Court dismisses this relief as the Court is unable to ascertain what fees Plaintiffs seek.

**CONCLUSION**

For the reasons discussed above, the Court GRANTS Defendants' motion to dismiss with leave to amend. Plaintiffs shall file an amended complaint which distinguishes between claims made by each plaintiff against particular defendants on or before June 30, 2017.

This Order disposes of Docket No. 27.

**IT IS SO ORDERED.**

Dated: June 16, 2017

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge